BILLINGS BENCH WATER ASSOCIATION, APPELLANT, *v.*
YELLOWSTONE COUNTY ET AL., RESPONDENTS.

(No. 5,441.)

Submitted March 19, 1924.   Decided May 6, 1924.)

[225 Pac. 996.]

*Counties—Highways—Rural Improvement Districts—Creation
—Lack of Jurisdiction—Failure to Give Notice—Recovery of
Assessment Paid Under Protest—Estoppel—Irrigation Com-
panies not Mandatories of Federal Government.*

Rural Improvement Districts—Failure of Notice—Lack of Jurisdiction—
Recovery of Assessment Paid Under Protest—Estoppel.
1. Failure to give the notice required by section 2 of Chapter 67,
Laws of 1919, in the attempted creation of a rural improvement dis-
trict deprived the county of jurisdiction to proceed and a property
owner, in his action to enjoin the collection of the tax against his
property to pay for the improvement, was not estopped to deny the
validity of the assessment by his omission to object to the creation of
the district prior to its completion.
Same—Exemption from Payment of Assessment—Irrigation Company not
Mandatory of Federal Government.
2. *Held,* that an irrigation company engaged in the reclamation of
arid lands under the Carey Act is not a mandatory of the federal
government, and therefore not exempt from assessments for special
improvements.

*Appeal from District Court, Yellowstone County; A. C.
Spencer, Judge.*

ACTION by the Billings Bench Water Association against
Yellowstone County and others. Judgment for defendants and
plaintiff appeals. Reversed.

Cause submitted on briefs of Counsel.

*Mr. Sterling M. Wood,* for Appellant.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. V.
Ketter,* Assistant Attorney General, for Respondents.

MR. JUSTICE GALEN delivered the opinion of the court.

From the allegations of plaintiff's amended complaint it appears that the plaintiff is a Montana corporation, and that it owns and operates a main irrigation canal some twenty miles in length, together with lateral ditches, headgates and other devices required for the irrigation and reclamation of between 23,000 and 24,000 acres of land in Yellowstone county. The main canal is supplied with water from the Yellowstone River, taken out southerly from the town of Laurel, running thence in a northeasterly direction toward and past the city of Billings. The stockholders of the plaintiff corporation are the owners of the land irrigated and served by the irrigation works, and of a perpetual water right in the irrigation canal and its appurtenances, water being supplied to the various stockholders at actual cost and without profit or benefit to the plaintiff. Plaintiff's predecessor in interest, the Billings Land & Irrigation Company, originally made location of the canal and appropriation of the water to be used for irrigation in the reclamation of the lands now used and occupied by the stockholders of the plaintiff corporation under an Act of Congress of August 18, 1894, commonly known as the "Carey Act" (U. S. Comp. Stats., sec. 4685), and the laws of the state of Montana relating to the reclamation of arid lands. The main canal is of an approximate general width of seventy-five feet throughout its course, and its depth is between six and seven feet; and during the irrigation season of each year the approximate depth of water carried in the main canal across the property of the plaintiff within special improvement district hereinafter alluded to is four and a half feet. In its course across such property it normally carries between 10,000 and 11,000 miner's inches of water. The only property of the plaintiff company lying within the confines of the special improvement district comprises a portion of its right of way for the main canal, approximately 100 feet in width, which is a

part of its general irrigation system. This property has long been necessarily and exclusively used as a right of way for the main canal, its embankment, and for the flow of water, and no other purposes.

In the year 1919 the board of county commissioners of Yellowstone county, upon petition regularly presented, acting under the provisions of Chapter 156 of the Laws of 1917, as amended by Chapter 67, Laws of 1919, passed its resolution of intention to create special improvement district No. 10 for the purpose of grading and paving a public highway known as the "Polytechnic Road," located in a thickly populated locality outside the corporate limits of any city or town. By the resolution it was provided that the expense of such improvement should be borne and paid by all property lying within the district, each parcel of land to be assessed for that part of the total cost which its area bears to the entire district, exclusive of public highways, avenues and alleys, the assessment to be spread over a period of ten years, and payable in annual installments. The resolution included with other lands in the district the right of way and canal of the plaintiff, described as consisting of "21.82 acres 100 feet wide R. O. W. through parts of section 30, township 1 N., range 25 E., and sections 31 and 32, township 1 N., range 26 E."

The resolution levied a total tax assessment against the plaintiff's property included in the district of $2,096.29, payable in annual installments beginning with the year 1921 and ending in the year 1930. Thereafter, in the month of September, there was duly delivered to the defendant Verne Johnson, as county clerk, a copy of the resolution fixing the assessment upon all property in the district, including the property of the plaintiff, and there was placed upon the tax-roll to be collected from the plaintiff its first installment of the tax for the year 1921, amounting to $209.63. The defendant demanded payment of that amount together with interest as a tax upon the plaintiff's property, and on the twenty-ninth day of No-

vember, 1921, plaintiff paid such tax to the county treasurer under protest, thereafter filing an action to recover the same, which is still pending and undetermined.

It is alleged that in the organization of special improvement district No. 10 the notice required to be given by the provisions of Chapter 156 of the Laws of 1917, as thereafter amended, was not given, in that no notice whatsoever was mailed to the plaintiff as an owner of property within the district, either at its last known place of residence or at all, of the adoption of or passage by the board of county commissioners of its resolution of intention to create the district; that the plaintiff did not protest either in writing or at all against the proposed work in the district or against the creation of the district to be assessed, for the reason that the notice required by law was not furnished; and that it had no knowledge of the assessment or intention to assess its property for highway improvement purposes within the district until about the time the tax was paid under protest.

Further, it is alleged that the plaintiff's property, by reason of its character, condition, and use perpetually for irrigation purposes, neither was nor is benefited either directly or indirectly or at all by the grading or paving of the "Polytechnic Road," and that the assessment made against its property is illegal, unlawful and void, and in violation of the fourteenth amendment to the Constitution of the United States.

It is further averred that the assessment as made is of such character that if left outstanding it will menace plaintiff's title to its right of way within the confines of the improvement district and imperil title to its property. Judgment is prayed that the resolution of the board of county commissioners, so far as it levies or purports to levy a tax or assessment against the plaintiff's property, be canceled, and that the defendants be enjoined from collecting the tax against the plaintiff's property or hereafter spreading any tax or assessment against it for any future years.

To the complaint a general demurrer was interposed by the defendants, and by the court sustained.   The plaintiff refusing to further plead, judgment was thereupon entered for the defendants.   Plaintiff has appealed.                               .

The only question before us is whether the plaintiff's complaint states a cause of action.

The regularity of the proceedings in creation of the district are not questioned, other than as to the legal authority to include plaintiff's property in the improvement district at all, and the failure to *mail* a written notice to the plaintiff of the passage of a resolution of intention to create the district.

Chapter 156 of the Laws of 1917, as amended by Chapter 67, Laws of 1919 (since repealed by Chapter 147 of the Laws of 1921), provided in part:

"Section 2.   Before creating any special improvement district for the purpose of making any of the improvements, acquiring any private property for any purpose authorized by this Act, the board of county commissioners shall pass a resolution of intention so to do, which resolution shall designate the number of such district, describe the boundaries thereof, and state therein the general character of the improvements which are to be made, designate the name of the engineer who is to have charge of the work, and an approximate estimate of the cost thereof.   Upon having passed such a resolution the board of county commissioners must give notice of the passage of such resolution of intention, which notice must be published for ten (10) consecutive days in a daily newspaper, or in two (2) issues of a weekly newspaper, published nearest to the place where such improvement district is to be created, and shall also cause to be posted within the boundaries of such special improvement district, a copy of such notice in three (3) public places, *and a copy of such notice shall be mailed to every person, firm or corporation, or the agent of such person, firm or corporation, having property within the proposed district, at his last known place of residence upon the same day*

*such notice is first published or posted.* Such notice must describe the general character of the improvement, or improvements, so proposed to be made, state the estimated cost thereof, and designate the time when and the place where the board of county commissioners will hear and pass upon all protests that may be made against the making or maintenance of such improvements, or the creation of such district, and the said notice shall refer to the resolution on file in the office of the county clerk for the description of the boundaries. * * *

"Section 4. At any time within fifteen days after the date of the first publication of the notice of the passage of the resolution of intention, any owner of property liable to be assessed for said work may make written protest against the proposed work or against the extending or creation of the district to be assessed, or both. Such protest must be in writing and be delivered to the county clerk, who shall indorse thereon the date of its receipt by him. At the next regular meeting of the board of county commissioners, after the expiration of the time within which said protest may be so made, the board of county commissioners shall proceed to hear and pass upon all protests so made, and its decision shall be final and conclusive. * * *

"Section 5. When no protests have been delivered to the county clerk within fifteen days after the date of the first publication of the notice of the passing of the resolution of intention, or when a protest shall have been found by said board of county commissioners to be insufficient, or shall have been overruled, or when a protest against the extending of the proposed district shall have been heard and denied, immediately thereupon the board of county commissioners shall be deemed to have acquired jurisdiction to order improvements, but before ordering any of the said proposed improvements, the board of county commissioners shall pass upon a resolution creating the said special improvement district in accordance with the

resolutions of intention theretofore introduced and passed by
the board of county commissioners.   *   *   *

"Section 12.   Whenever any lot, piece or parcel of land be-
longing to the United States or *mandatory of the government
shall front* upon the proposed work or improvement, or to be
included within the district declared by the board of county
commissioners in its resolution of intention to be a district to
be assessed to pay the cost and expenses thereof, the said board
of county commissioners shall in the resolution of intention
declare that said lots, pieces or parcels of land or any of them,
shall be omitted from the assessment thereto to be made to
cover the cost and expenses of said work or improvement and
the cost of said work or improvement in front of said lots,
pieces or parcels of land shall be paid by the county from its
general fund.

"Section 13.   To defray the cost of making improvement in
any special improvement district, the board of county commis-
sioners shall by resolution levy and assess a tax upon all prop-
erty in the district created for such purpose, by using for a
basis for such assessment the method provided for by this Act.
Such resolution shall contain a description of each lot or parcel
of land, with the name of the owner, if known, and the amount
of each partial payment, when made and the day when the
same shall become delinquent.   The payment of the assessment
to defray the cost of constructing any improvements in special
improvement districts may be spread over a term of not to
exceed ten (10) years, payment to be made in equal annual
installments.   *   *   *

"Section 21.   It shall be the duty of the county treasurer in
accordance with the provisions of the Revised Codes of Mon-
tana where the resolution of assessment has been duly certified
by the county clerk to collect such assessment in the same
manner and at the same time as taxes for general and muni-
cipal purposes are collected by him.   *   *   *

"Section 24. Any mistake in the description of property or the name of the owner shall not vitiate any liens created by this Act, unless it is impossible to identify the property from the description. * * *

"Section 25. * * * Subdivision 4. The notices, resolutions, orders or other matter required to be published by the provisions of this Act, shall be published in a daily newspaper or in a semi-weekly newspaper, or weekly newspaper, to be designated by the board of county commissioners, as often as the same is issued during the period specified for said publication, and no other statute shall govern or be applicable to publications herein provided for."

In this case we are not concerned whether the plaintiff's [1] lands are of a character such as may lawfully be included in the district, since it appears that the plaintiff was not given the notice required by the statute of the intended inclusion of its property. This goes to the jurisdiction of the board of county commissioners in the premises. The notice required not having been given, no obligation rested upon the plaintiff to make protest in protection of its rights. The statute explicitly requires notice of the passage of the resolution of intention to create the district, to be given (1) by publication in a newspaper, (2) by posting of a copy of the notice in three public places within the boundaries of the proposed district, and (3) by mailing a copy of such notice to every person, firm or corporation having property within the district, at place of last known residence, *"upon the same day such notice is first published or posted."* Nothing short of a strict compliance with all of these requirements will suffice. As was well and appropriately said by Mr. Chief Justice Brantly speaking for this court in the case of *Shapard* v. *City of Missoula,* 49 Mont. 269, 279, 141 Pac. 544, 547; "The resolution of intention is the primary step to be taken in every instance. It is the basis of the whole proceeding. It, with a notice of its adoption, is a condition precedent; nothing may be substituted in its place,

and, though the proceedings may in all other respects conform to the requirements of the statute, the omission of it is fatal and renders all the subsequent proceedings nugatory.   *   *   * Nor is the proceeding aided in any way by the failure of any property owner to file with the   *   *   *   clerk his written objection to the regularity of the proceedings, within sixty days after the letting of the contract.   The conclusive presumption of waiver, declared in section 13 of the Act, is predicated upon the passage of the resolution of intention and the publication of the required notice as a condition precedent; and, though the section may be regarded as having a curative purpose and may accomplish this purpose so far as regards other irregularities in the proceedings, it cannot supply jurisdiction when it has not been acquired by observance of the antecedent steps necessary to acquire it.''

The case of *Power* v. *City of Helena* is wholly without application, for therein the regularity of the proceeding creating the district was not questioned.   It is expressly noted by Mr. Justice Holloway, speaking for this court, that ''from the facts pleaded and the legal presumptions arising therefrom, it may be conceded that the resolution was regularly passed; that its contents are sufficient; that the required notice was given; and that plaintiff did not appear or object to the improvement or to the inclusion of his property within the district.''   (43 Mont. 336, 340  (36 L. R. A. (n. s.) 39, 116 Pac. 415, 416.)

In the case of *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454, the jurisdiction of the city council in the creation of a sewer district was questioned, and Mr. Justice Holloway, again speaking for this court, said: ''Did the city council *   *   *   acquire jurisdiction to proceed to create the district and construct the sewer?   If such jurisdiction was acquired, then the decision in the *Power Case* is conclusive against appellants upon this branch of the case; but if such jurisdiction was not acquired, then the decision in the *Power Case* is not authority in this one.''   The court then proceeds to an ex-

tended review of the statutory requirements, and holds that
the city council was without jurisdiction in the creation of the
district, and that the trial court erred in sustaining a general
demurrer to the plaintiff's complaint seeking an injunction
restraining the sale of their property for delinquent special
sewer district assessments.

And it is quite generally held that failure to give the notice
prescribed by statute in the attempted creation of an improve-
ment district deprives the county of jurisdiction to proceed,
and a property owner is not estopped to deny the validity of
an assessment, though he makes no objection until after the
work is completed.    (*Johnston* v. *City of Hardin,* 55 Mont. 574,
179 Pac. 824; *Cooper* v. *City of Bozeman,* 54 Mont. 277, 169
Pac. 801.)    And see illuminating and exhaustive note on "As-
sessment for Improvement—Waiver," 9 A. L. R. 634, 783.

A property owner cannot be held to have waived his right
to object to an assessment illegally made against his property,
or become estopped to object, where the assessment is void by
reason of lack of jurisdiction to impose it as in this instance.

The description of plaintiff's lands attempted to be included
within the district and taxed is not a model, and it is very
doubtful if it is sufficient for the purpose of identifying plain-
tiff's property for the purpose of inclusion or assessment.

Plaintiff argues that its property was wrongfully included
[2]  in the district at all, as it is a mandatory of the govern-
ment within the meaning of section 12 of the statute under
consideration.    There is no merit to this contention in our
opinion.

The case of *Simineo* v. *Swords,* 68 Mont. 164, 216 Pac. 806,
cited and relied upon by the plaintiff, in no manner sustains
its contention.    Plaintiff's property is no different than other
privately owned property; the plaintiff being a corporation
organized under the laws of the state of Montana for the pur-
pose of acquiring and perpetually maintaining the irrigation

system for the benefit of land owners who are stockholders therein.

The judgment is reversed and the cause remanded to the district court of Yellowstone county, with directions to overrule the demurrer to plaintiff's complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.