SCILLEY, Respondent, *v.* RED LODGE–ROSEBUD IRRIGATION DISTRICT et al., Appellants; FARM MORTGAGE CORPORATION, Intervener and Appellant.

(No. 6,276.)

(Submitted October 6, 1928. Decided November 14, 1928.)

[272 Pac. 543.]

*Messrs. Wood & Cooke,* for Appellants, submitted an original and a reply brief; *Mr. Sterling M. Wood* argued the cause orally.

*Messrs. Johnston, Coleman & Johnston,* for Respondent, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Early in 1926 Jessie G. Scilley, as the owner of land in the Red Lodge-Rosebud Irrigation District, commenced action against the district and its directors, and Charlotte Dilworth, as treasurer of Carbon county, seeking a decree of the district court of that county declaring the order creating the district null and void, severing her land from the district, and enjoining the county treasurer from selling it for delinquent taxes and the directors from levying further assessments against it.

Plaintiff's amended complaint contains appropriate allegations to support the decree sought, if the facts alleged entitled her to any relief.

The Farm Mortgage Corporation, holder of a bond issued by the district, was permitted to intervene. Its so-called "complaint in intervention" is in fact an answer, containing admissions and denials of the allegations of the complaint, and affirmative defenses based upon alleged estoppel and bars to plaintiff's action.

The defendants' answer is, in effect, the same as that interposed by the intervener. All new matter was denied by replies.

Being an equitable action, the cause was tried to the court without a jury. At the outset defendants and the intervener objected to the introduction of any testimony on the ground that the complaint does not state a cause of action nor entitle plaintiff to any relief. The objection was overruled, and oral and documentary evidence was adduced by all parties to the action. In due time the court made and filed its findings of fact and conclusions of law in favor of plaintiff and thereon entered its judgment and decree severing and excluding plaintiff's land from the district, enjoining its sale for delinquent taxes, and restraining the directors from further levy or assessment against it.

Defendants and the intervener have appealed from the judgment. They specify error upon the entry of judgment

and the overruling of their objection to the introduction of testimony. The first of these specifications is divided into six subheads, but they are all argued together and present but the questions hereinafter discussed.

Plaintiff's proof follows the allegations of the complaint and supports the findings made, which will, therefore, not be disturbed.

From the court's findings and those necessarily implied, the facts on which the trial court based its conclusions of law and judgment are substantially as follows: On March 23, 1920, a petition for the creation of the defendant district was filed in the district court of Carbon county, which petition included a description of 360 acres of land owned by plaintiff, but was silent as to whether such land was irrigated or nonirrigated. It contained a recital that the names and postoffice addresses of owners not residing in Carbon county were contained in Exhibit "A" attached thereto. This exhibit but lists the owners as "signers" of the petition and "nonsigners," plaintiff being listed in the latter class, and her postoffice address being given as "Luther, Mont.," a town in Carbon county. In fact the plaintiff was a resident of Twin Falls, Idaho, which fact was known to the drafters of the petition, where she located with her husband on March 5, 1920, going there from Canada, but visiting for a few days before proceeding to Twin Falls, with her son who resided on the land in question as a crop renter. The land constituted an improved, irrigated farm with an adequate supply of water and irrigating system appurtenant thereto which covered all but approximately twenty acres thereof.

On the filing of the petition, the district court forthwith fixed the time of hearing thereon as May 4, 1920, and directed publication of notice of hearing, and of the petition as provided by law. A copy of the petition and notice was thereafter published in a newspaper of the county, in its issues of March 31 and April 7, and the clerk of the court mailed copies to all owners of land described in the petition whose postoffice addresses were given in Exhibit "A" as being

outside of the county, but did not include plaintiff in his mailing list, and no such copies were ever received by plaintiff at Luther, or elsewhere. Plaintiff never consented to the inclusion of her land in the district, in writing or otherwise, and had no knowledge of the hearing to be had on the petition.

On August 10, 1920, the district court entered its order creating the district including plaintiff's land therein, a certified copy of which was duly filed in the office of the recorder of Carbon county on September 29, 1920.

All steps taken for the creation of the district were taken under permissive statutes of this state for the creation of irrigation districts, in good faith and a bona fide attempt to comply with such statutes; and ever since its purported creation the district has functioned and done business as a public corporation of the state. In 1921, and again in 1924, it levied an assessment on the lands within the district, and in each of such years its proportion of such tax was spread against plaintiff's land and the amount thereof paid by plaintiff's husband with the general taxes due on the land, but neither plaintiff nor her husband knew that irrigation district taxes were included in the taxes so paid.

In 1923 the district issued and sold bonds of the district totaling $418,000, one of which is now owned by the intervener and, the proper steps having been taken, the district court approved and confirmed the sale; no notice of this proceeding was served upon plaintiff, and she had no knowledge of the bond issue.

In 1925 the district levied an assessment against all lands in the district for the payment of certain costs of construction, principal and interest on bonds and other charges, as well as for operating and maintenance expenses, and these amounts for the several purposes were so intermingled that the proportion or amount levied for operating and maintenance cannot be definitely determined. The proportion of this assessment charged to plaintiff's land was $310.35, which amount was duly spread on the books of the county and added

to the general taxes against the land for the year 1925, amounting to $153.92.

Plaintiff first became aware of the fact that her land was taxed for irrigation district purposes when she received her tax notice in the fall of 1925. She then investigated, and ascertained for the first time that her land had been included in the district. She thereupon tendered to the county treasurer the amount of the general taxes; the treasurer refused the tender and plaintiff commenced this action, depositing the amount tendered in court.

As plaintiff had no knowledge of the proceedings, she, of course, did not appeal within the time allowed by law, or at all, from either the order creating the district, or the order confirming the sale of bonds.

It will be noted that the judgment here does not declare that the district was never legally created, nor affect any part thereof except the land of plaintiff, and the findings of the court warrant the conclusion that the district exists as a *de facto* corporation, at least. The basis of the decision is the conclusion of the court that it never acquired jurisdiction over the plaintiff or her land, by reason of defective service of notice by publication; second, because of failure to personally serve a copy of the petition and notice of hearing upon her; and, third, by failing to secure from her written consent to the inclusion of her irrigated land within the district.

1. Our Codes provide the manner in which irrigation districts may be organized and bonds issued and sold, and declare the effect of orders creating such districts and affirming their bond issues. Conceding, for the sake of argument, that the provisions regarding publication and service of notice of hearing, and requiring consent in writing to the inclusion of irrigated lands in the district, were violated, counsel for defendants and the intervener first contend that plaintiff cannot maintain her action, as she did not appeal within the time allowed by law from either the order creating the district, or the order confirming the issuance and sale of the

bonds. In this regard, section 7169, Revised Codes of 1921, after dictating the findings which shall be made by the court on hearing the petition and providing for the entry and recording of the order creating the district, declares: "Such finding and order shall be conclusive upon all the owners of lands within the district that they have assented to and accepted the provisions of this Act; and shall be final unless appealed from to the supreme court within sixty days from the day of entry of such order."

Section 3967, Id., provides for the confirmation of bond issues by "judgment or decree," and for an appeal therefrom within thirty days after entry, and declares that—"if no such appeal be taken * * * or * * * such judgment or decree * * * be affirmed by the supreme court, such judgment or decree shall be forever conclusive upon all the world as to the validity of said bonds and said special tax or assessment [made for the payment of principal and interest] and the same shall never be called into question in any court in the state."

These provisions have been carried forward from our original Irrigation District Law, enacted as Chapter 146, Laws of 1909, and thereon this court has held that the time during which an appeal may be taken from the orders in question having expired, neither an order creating a district nor an order confirming the issuance and sale of the bonds, "in the absence of allegation and proof of fraud procuring it," can be called in question. (*O'Neill* v. *Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283; *In re Fort Shaw Irr. Dist.*, 81 Mont. 170, 261 Pac. 962.)

However, fraud is not the only ground on which a judgment may be attacked after the time for appeal has elapsed, and, in the decisions cited, the court was speaking with reference to the case before it only, in each of which the parties contesting the legality of an irrigation district were before the court on proper notice at the time the district was

created, and therein sought to raise questions other than those affecting the jurisdiction of the court to create the district.

The rule to which the court suggested an exception in the case of fraud is, that "where the court has jurisdiction of the parties and the subject matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment, by parties or privies, in any collateral action or proceeding whatever" (Freeman on Judgments, 2d ed., sec. 245), and "no principle of law is more firmly settled than that the judgment of a court of competent jurisdiction, so long as it stands in full force and unreversed, cannot be impeached in any collateral proceeding on account of mere errors or irregularities, not going to the jurisdiction" (Id., sec. 261); but a judgment, void on its face for want of jurisdiction, is a nullity and may be attacked in even a collateral proceeding (*Estate of Pusey,* 180 Cal. 368, 181 Pac. 648; *Galpin* v. *Page,* Fed. Cas. No. 5205, Sawy. 309), and what is included in the term "collateral attack" is often difficult of ascertainment. The term is defined in *Jenkins* v. *Carroll,* 42 Mont. 302, 112 Pac. 1064, and in *Sharkey* v. *City of Butte,* 52 Mont. 16, 155 Pac. 266, it is held that an action to have the resolution of a city council, extending the boundaries of the city, declared void, the property of owners declared outside the city limits and the authorities enjoined from assuming jurisdiction over the persons or property in the affected territory, was a direct and not a collateral attack. (See, also, *Pool* v. *Town of Townsend,* 58 Mont. 297, 191 Pac. 385.)

In California it is held that the owner of lands illegally included in an irrigation district may defend in an action by a bondholder against the district and therein have his lands segregated and excluded from the district. (*Nevada Nat. Bank* v. *Poso Irr. Dist.,* 140 Cal. 344, 73 Pac. 1056.)

The purpose of the instant action is similar to that considered in each of the above decisions; and on these decisions, and for reasons hereinafter appearing, we hold that the action is not such a collateral attack upon the judgment of

creation of the district as falls within the prohibition of the above rule.

It is, therefore, apparent that, standing alone, the above provisions declaring, in effect, that an appeal is the exclusive method of attacking the validity of a judgment creating an irrigation district or the confirmation of a bond issue and sale, do not bar an action by which it is sought to evade the effect of such judgments on grounds recognized as sufficient to vacate any ordinary judgment.

2. Counsel, however, assert that the rules applicable to ordinary judgments cannot apply, as the district is at least a *de facto* public corporation, and that, as to such a corporation, a private individual cannot, unless authorized by statute, question the validity of its existence either by direct attack or otherwise.

The final paragraph of section 7169, above, declares that every irrigation district established under the provisions of the Act is declared to be "a public corporation for the promotion of the public welfare," and the general rule is that "where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties." (1 Dillon on Municipal Corporations, 5th ed., 121; 1 McQuillin on Municipal Corporations, sec. 158; 1 Cooley on Constitutional Limitations, 8th ed., 531.) This rule is grounded upon public policy, and seems to be generally applied where the nature of the action sought to be prosecuted would necessarily result in the destruction of an entity which has, for a considerable period of time, dealt with the public generally and created rights and liabilities which, in justice and good conscience, cannot be evaded.

Thus, in *Henderson* v. *School District*, 75 Mont. 154, 242 Pac. 979, relied upon by defendants and the intervener, we held that an action to enjoin an election for a bond issue by a school district on the ground that the district was not originally created legally, would not lie where the district

had functioned for a period of five years and the taxpayers, including the plaintiff had acquiesced therein by paying taxes levied, even though the record disclosed that the plaintiff had no knowledge of the creation of the district until shortly before the action was commenced, and this because of "the confusion into which a judgment * * * that the organization was void, would throw public and private rights and interests acquired through years of operation with the acquiescence of the inhabitants."

In the case at bar, however, this question of public policy does not enter, since the judgment rendered does not affect the validity of the district's organization. It is true that the plaintiff alleged its invalidity, and prayed for such a judgment, but such allegation was not necessary to state a cause of action, and such judgment was not necessary to secure the relief sought. A land owner who thus seeks the exclusion of his lands from the district in no way assails the regularity or validity of the creation of the district; "his action may be determined either way; that is, his lands may by the court be held exempt under the proviso, or it may be held not exempt, and yet the organization of the district and its legal existence remain the same as if no action had been commenced." (*Horn* v. *Shaffer*, 47 Utah, 55, 151 Pac. 555.) That allegation may, therefore, be treated as surplusage, and the action considered merely as one based upon the alleged illegality of the inclusion of plaintiff's land within a valid district.

The rule above has, however, been applied in actions similar to this (*Soniat* v. *White*, 155 La. 290, 99 South. 223; *Morgan's Co.* v. *White*, 136 La. 1074, 68 South. 130; *Kuhn* v. *Port Townsend*, 12 Wash. 605, 50 Am. St. Rep. 911, 29 L. R. A. 445, 41 Pac. 923). The Louisiana decisions seem to be grounded squarely upon the rule announced, but the reported cases do not disclose whether the grounds urged as to the illegality of the creation of the corporations in question went to the jurisdiction of the creating tribunal or otherwise; while

in the Washington decision it is pointed out that "the objections urged against the proceedings of the" city council " * * * do not go to any question of jurisdiction but constitute mainly irregularities and informalities not affecting jurisdiction, and afford no ground for collateral attack," but the court held that "appellant's participation in the * * * proceedings, his subsequent recognition of the jurisdiction of the city authorities, his acquiescence in the result reached * * * and his gross laches, * * * constitute an equitable bar to the cause of action." This decision is in line with what is said in the *Henderson Case* above, regarding estoppel.

The second Louisiana decision is, of course, based largely upon the first, which cites many decisions in support of the rule announced, among them the highest authority in the land, the supreme court of the United States (*Tulare Irr. Dist.* v. *Shepard,* 185 U. S. 18, 46 L. Ed. 773, 22 Sup. Ct. Rep. 531). In the *Tulare District Case,* Shepard brought action against an irrigation district created under the laws of California, similar to our own, to recover on interest coupons attached to a bond of the district. The district and two land owners therein attempted to defend, on the ground of insufficiency of the published notice of the proposed presentation of the petition for the creation of the district. The court held that, under the laws of California, such a district is a public municipal corporation, and that, in spite of jurisdictional defects, if they existed, a corporation *de facto* came into existence by a bona fide attempt at creation, followed by user, and that the general rule is that no one but the state can question the validity of such a corporation, but said: "It is contended however, that there is an exception to the general rule in such a case as this, because the proceedings of the corporation may result in the levy of an assessment upon lands of private owners within the district, and such owners are therefore permitted to raise at any time the question of the illegality by reason of the want of

notice of the organization of the corporation," citing *In re Central Irr. Dist.*, 117 Cal. 382, 49 Pac. 354, *Reclamation District* v. *Burger*, 122 Cal. 442, 55 Pac. 156, and *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56. The court then treated the suggested exception to the rule as existing by considering the case presented, but declared that the last case cited "did not hold that under all circumstances the land owner could, at any time, show the absence of notice even against a bona fide purchaser of bonds, * * * and we think that the land owner may be prevented from showing want of notice in such a case as the one presented herein,—a bona fide holder of bonds for full value without notice, and a land owner sleeping upon his rights." The court then held against the land owners and in favor of the bondholder, by applying practically the same rule as was announced in *Kuhn* v. *Port Townsend*, above.

Analyzing the cases cited, we find that the supreme court of California has answered not only the contention here under consideration, but that made by counsel that a different rule should prevail in this class of cases from that invoked with reference to improvement districts of a purely local character. Thus in *Reclamation District* v. *Burger*, above, that court said: "The proceeding results in putting a burden upon property against the will of the owners, and the requirements as to proceedings of that character cannot be evaded by calling the governmental agency through which the proceeding is conducted a corporation. As remarked in *People* v. *Reclamation Dist. 551*, 117 Cal. 114 [48 Pac. 1016], the proceeding greatly resembles those in which property is assessed for local improvements in proportion to benefits, and I see no reason why the same rules as to essential requirements should not apply. The board of supervisors is required to inquire and determine whether the petition is sufficiently signed. So far as this depends upon a fact to be determined, their conclusion may be final as an adjudication, but the question is not whether the district has

so acted as to constitute a corporation *de facto*. (*Lower Kings River etc. Dist.* v. *Phillips,* 108 Cal. 306 [39 Pac. 630, 41 Pac. 335].) If, upon due notice and a petition sufficient in form, the parties have been afforded an opportunity to be heard before a competent tribunal, they have had due process according to the law of the land, and are concluded. They cannot be deprived of their property without such hearing, or opportunity to be heard, by proof of the existence of a corporation *de facto*. There must have been, in fact, a substantial compliance.''

In *Fallbrook Irr. Dist.* v. *Bradley,* above, the supreme court of the United States, following the decisions of the California court and interpreting its laws, in effect held that a complaint, in all essential features identical with the one before us, stated a cause of action, and proof of the facts alleged warranted an injunction. Therein the reason for the general rule which, apparently, raises an estoppel against asserting even jurisdictional defects in the creation of a public corporation, and for the exception to the general rule, noted in the Tulare Irrigation District decision, is made plain by the following language: ''There is nothing in the essential nature of such a corporation, so far as its creation only is concerned, which requires notice to or hearing of the parties included therein before it can be formed. It is created for a public purpose, and it rests in the discretion of the legislature when to create it, and with what powers to endow it. In the Act under consideration, however, the establishment of its boundaries and the purposes for which the district is created, * * * will almost necessarily * * * result in an assessment upon all the lands included within the boundaries of the district. The legislature thus in substance provides for the creation not alone of a public corporation, but of a taxing district whose boundaries are fixed, not by the legislature, but, after a hearing * * * [and] when as in this case the determination of the question of what lands shall be included in the district is only to be decided after a

decision as to what lands described in the petition will be benefited, and the decision of that question is submitted to some tribunal * * * the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits * * * before his property can be taken. This, in substance, was determined by the decisions of this court in *Spencer* v. *Merchant,* 125 U. S. 345, 356 [31 L. Ed. 763, 8 Sup. Ct. Rep. 921], and *Walston* v. *Nevin,* 128 U. S. 578 [32 L. Ed. 544, 9 Sup. Ct. Rep. 192]. Such a hearing upon notice is duly provided for in the Act.''

The subjection of lands to assessments for the construction or purchase of an irrigation system and water rights is a taking of such lands to the extent of the charges thus laid upon them, and notice giving to the land owner an opportunity to be heard on the question as to whether his lands are such as may properly be included within the district for the creation of which a petition is filed, must be provided for, and service had in accordance with such provision, or the taking is without due process of law and violative of the Constitution; this matter is jurisdictional. (Const., sec. 27, Art. III; *In re Gallatin Irr. Dist.,* 48 Mont. 605, 140 Pac. 92; *Billings Bench Water Assn.* v. *Yellowstone County,* 70 Mont. 401, 225 Pac. 996.)

An exception to the general rule announced must, therefore, be made in favor of a land owner whose lands have been included within such a district as this without his consent and without giving him an opportunity to be heard on the question as to whether his lands are of a character to be so included, where his attack does not go to the existence of the corporation by seeking to destroy it, but goes only to the validity of the judgment in so far as it affects such lands and seeks to take and hold them without due process of law.

3. Counsel for defendants and the intervener urge that the defects in the original proceeding for the creation

of the district were cured and the district validated by the following legislative Acts:

In 1921, after the creation of the district involved in this action, an Act was passed which declares that "where districts have heretofore been organized, or bonds authorized, issued or sold or any proceedings have been undertaken on the theory that under the laws as they then existed, assessments might be assessed, levied or collected, such organization, authorization, issuance or sale of bonds and any and all such proceedings are hereby validated, cured and confirmed. All districts that have been organized * * * in the manner provided by Chapter 14, Acts of Extraordinary Session Sixteenth Legislative Assembly, shall hereafter be considered as being subject to and governed by the provisions of this Act and all proceedings conforming with the provisions of said Chapter 14, * * * are hereby declared sufficient and confirmed and complying with the terms of this Act." (Chap. 153, sec. 72, Laws of 1921, now section 4024, Rev. Codes 1921.)

Again, in 1923, the legislature sought to protect funds invested in irrigation district bonds and insure the uninterrupted functioning of such districts as had been going concerns for a year or more, by enacting an addition to the then existing Irrigation District Laws, to be known as section 7231A, Revised Codes of 1921, which Act declares that "no suit, action or proceeding shall be brought in any court in this state attacking the validity or regularity of any order or decree of the court purporting to establish a district hereunder * * * after the expiration of six months from the date of the recording of the order establishing the district * * * [and] all districts heretofore established by order of the court and having a *de facto* existence, of at least one year, are hereby declared to be valid and legally created subdivisions of the state, and the regularity and validity of the creation of such districts * * * shall not be open to question in any court in this state, and all acts and proceedings of any such district and of its board of commissioners

leading up to the authorization, issuance or sale of bonds * * * are hereby legalized, ratified, confirmed and declared valid.'' (Chap. 54, sec. 2, Laws of 1923.)

Counsel contend that these enactments, whether curative statutes, strictly speaking, in the nature of statutes of limitations, the declaration of a public policy, or whatever their nature, cannot be declared unconstitutional, as we have no constitutional prohibition against the passage of retrospective laws, and, ergo, they bar plaintiff's action, since they are ''effective to cure errors of every sort.''

With counsel's statement as to the status of the Acts we agree; no question as to the constitutionality of the Acts quoted will herein be considered or determined, in so far as the power of the legislature to pass those Acts is concerned, bearing in mind the legislative injunction that, as the object of our Irrigation Act is ''to secure the irrigation of lands of the state, and thereby to promote the prosperity and welfare of the people, its provisions shall be liberally construed so as to effect the objects and purposes'' therein set forth (sec. 7262, Rev. Codes 1921), we will give to the enactments under consideration the full effect which may be given to them without doing violence to our Constitution and other fundamental laws of the land.

Our legislature has, by fiat, done everything in its power to render the rule of public policy announced in the *Henderson Case,* above, applicable to irrigation districts as against all the world, and has attempted, by statute, to guard against and to relieve such public corporations from the effect of every conceivable error or irregularity which may have crept into the proceedings had for their creation, particularly after such corporations have issued and sold bonds and otherwise functioned and done business with the public for a year or more. This endeavor on the part of the legislators is laudable, for, if after years of such operations, the creation of a district may be declared invalid, wholesale ruin and disaster may follow within and without the territory included

within the supposed district; bondholders be stripped of their security for money loaned in good faith, and future worthy projects be subject to suspicion and distrust. For these reasons, courts should declare against the validity of the organization of such going concerns only for the most cogent reasons, and when irresistibly compelled to such a course.

"The control of *remedies,* exercised by the enactment of laws to cure defects in previous statutes, or to supply former omissions and legalize past Acts, is one of the most essential of legislative powers." "The principle upon which curative or 'healing' Acts, or Acts legalizing past transactions, are based, is stated by Judge Cooley in the following language: 'If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something which the legislature might have dispensed with the necessity of by a prior statute, then a subsequent statute dispensing with it retrospectively must be sustained.' (Cooley's Constitutional Lim., 371.)" (Wade on Retroactive Laws, 291, 292.) A party to an action has no vested right in a defense based upon informalities not affecting his substantial equities, and the legislature may deprive him of such a right (Cooley on Constitutional Limitations, 7th ed., 528), and conversely, the legislature may properly deprive a party of the right to attack a judgment or order on the ground of such irregularities, but the very rule itself prohibits the validating of a judgment affecting substantial property rights where the judgment was obtained against the owner without bringing him or his property within the jurisdiction of the court rendering the judgment; as such a judgment never had life, there can be no hope for the resurrection of it. (*Shapard* v. *City of Missoula,* 49 Mont. 269, 141 Pac. 544; *Billings Bench Water Assn.* v. *Yellowstone County,* above; Cooley's Constitutional Limitations, 7th ed., 530; Freeman on Judgments, sec. 117; 34 C. J. 510.)

The validating Act of 1923, above, in so far as it expresses the rule of public policy announced in the *Henderson Case,*

above, and prohibits the bringing of any action attacking the validity or regularity of "the creation of such districts," may properly be held to bar any suit which must necessarily result in a judgment or decree vacating the original order *in toto* after a district has functioned for the period of one year (*City of Pullman* v. *Hungate*, 8 Wash. 519, 36 Pac. 483), but it cannot be given the effect of curing a want of jurisdiction over an individual land owner and his lands, on the question of the inclusion of his lands in an irrigation district, for the "thing wanting"—notice—is one which the legislature could not have dispensed with in the first instance without violating the due process provision of the Constitution, above. (*Lamont* v. *Vinger*, 61 Mont. 530, 202 Pac. 769; *Cooper* v. *City of Bozeman*, 54 Mont. 277, 169 Pac. 801.)

Counsel have suggested that the full force of the rule as to retroactive laws, above quoted, does not apply to cases involving public corporations, but we find no authority for the suggestion in either text-books or decided cases. Thus Dillon, in his work above referred to, at page 124, says: "The legislature, having the power to create municipal corporations, may validate an attempted organization of a municipality—provided the validating statute be enacted in conformity with any constitutional restrictions placed upon the manner in which the incorporations of cities and other municipalities shall be effected. This is simply the application of the principle that it is within the power of the legislature to give force and effect to an act which, but for irregularity, would have been valid, provided it could, in advance, have authorized the act to be done."

And again, in Wade on Retroactive Laws, section 256, the author, continuing his discussion of this subject, declares that "when the acts of municipal corporations depend for their validity upon other conditions than consent of the legislature, whether those conditions can be dispensed with by a retroactive law depends upon the authority by which they were prescribed. If they are of legislative creation,

and do not establish contract relations between parties, they may be dispensed with in the same manner and with like effect as the consent of the legislature, when such dispensation does not have the effect to divest proprietary rights."

As a result of the foregoing analysis of the authorities, we are compelled to conclude that the complaint herein states a cause of action, and that the court did not err in overruling the objections to the introduction of testimony.

The remaining questions to be determined are as to whether, on the facts found, the court was justified in its conclusion, as a matter of law, that it did not, originally, acquire jurisdiction over the person or land of the plaintiff.

4. Section 7168, Revised Codes of 1921, being a part of our Irrigation Act, after requiring the court to fix a time and place for hearing on any petition for the creation of such a district, provides that "thereupon the clerk of said court shall cause to be published at least once a week for two successive calendar weeks in some newspaper published in the county where the said petition is filed, a copy of such petition, together with a notice stating the time and place, by the said district court fixed, when and where the hearing on said petition will be had; * * * the first publication of said petition and notice shall be not less than thirty days prior to the time mentioned in said notice for said hearing. If any holder of title or evidence of title to lands within the proposed district is a nonresident of the county or counties in which the proposed district lies, the clerk of said court shall, within three days after the first publication aforesaid, mail a copy of said petition and notice to each such nonresident whose postoffice address is stated in said petition."

On the authority of *Garry* v. *Martin*, 70 Mont. 587, 227 Pac. 573, plaintiff alleges in her complaint, and now asserts, that the publication had only on March 31 and April 7 did not meet the above requirements. The case of *Garry* v. *Martin* arose over an attempted creation of a new county under an Act which provided only that the notice of hearing

on petition must be published "at least once a week for two weeks next preceding the date fixed for such hearing," and, in determining the sufficiency of a publication in but two issues of a newspaper, as here, the writer of the opinion therein demonstrated that, if the requirement of the Act could be satisfied by such publication, the time elapsing between the first publication and the hearing could be shortened to but eight days; it was then held that, in providing for notice in so important a matter as the creation of a county, the legislature "certainly did not contemplate that less than two full weeks' notice should be given"; that "for two weeks" meant "throughout or during the continuance of two weeks," and that, under the manifest intention of the legislature, full fourteen days must elapse "next preceding" the day of hearing during which the statute required notice to be published, therefore compelling three publications.

Without questioning the correctness of the construction placed upon the statute under consideration in the *Garry Case,* we are of the opinion that the phraseology used in section 7168, above, does not warrant the inference of a like legislative intent nor compel a like interpretation of the requirement here laid down. Therein the period of "two weeks" referred both to the period of time to elapse before the hearing and to the publication of notice, as deduced from the phrase used; here the period of two weeks has nothing to do with the time to elapse before the hearing, as that period is definitely fixed in the statute as "not less than thirty days," thus segregating the provision as to publication from the period to elapse before the hearing. Having effected this segregation, the legislature saw fit to precede the term "weeks" by the descriptive words "successive" and "calendar," and we must, in construing a statute, give effect to every word used therein, if it is possible to do so. (*Stange* v. *Esval,* 67 Mont. 301, 215 Pac. 807; *City of Billings* v. *Public Service Commission,* 67 Mont. 29, 214 Pac. 608.)

" 'Calendar' * * * means the division of time into years, months, weeks, and days, and a register of them." (*Rives* v. *Guthrie*, 46 N. C. 84.) "A calendar month" is "a month * * * designated in the calendar" (*Daley* v. *Anderson*, 7 Wyo. 1, 75 Am. St. Rep. 870, 48 Pac. 839); thus a "calendar" week is a block of seven days registered on the calendar in general use, as beginning with Sunday and ending with Saturday. "Successive" means following one another in line or series. (Webster's Dictionary.)

Considering such a phrase as here used, except as to the word "calendar," and as applying only to the requirement as to publication, it is held to require publication for the number of times expressed in weeks, but not more than seven days apart (*Hernandez* v. *His Creditors*, 57 Cal. 333), and this holding is said to be in accordance with the weight of authority. (*Myakka Co.* v. *Edwards*, 68 Fla. 372, Ann. Cas. 1917B, 209, 67 South. 217.)

The distinction between a provision such as was considered in the *Garry Case* and that before us is pointed out in *State* v. *Hanson*, 80 Neb. 724, 115 N. W. 294, thus: "Where the time mentioned by the statute expresses the duration of the notice, the same must be published for and during the time mentioned. Where, however, the time mentioned indicates only the number of times the notice" shall be "published, it is satisfied if the notice is published the number of times mentioned."

The publication under consideration complied with the requirements of section 7168 above, and, as pointed out in *State* v. *Hanson*, above, this ruling does not, in any manner, conflict with the holding in *Garry* v. *Martin*, above.

However, the mere publication of notice as required does not satisfy the requirement as to notice to a nonresident land owner; the statute goes further and requires that a copy of the petition and notice be mailed to parties situated as was this plaintiff, and, while the published notice was sufficient legally to establish the district and a defect therein

might be cured or the district itself validated by subsequent retroactive legislation, the requirement as to mailing was a prerequisite to the inclusion of plaintiff's land within a lawfully created district.

This notice, as above pointed out, serves the double purpose of vesting the court with jurisdiction to create the district and of affording to land owners the necessary opportunity to be heard on the question as to whether their lands are such as can be taken into the district without their consent—a question never determined as to plaintiff's land, since the petition did not show whether it was irrigated or not, and the plaintiff was never brought before the court.

An irrigation district is in the nature of a special improvement district, and the justification and authority for levying special assessments are derived from the benefits which the expenditure of the tax or assessment confers upon the owners of lands included in the district (*Cosman* v. *Chestnut Valley Irr. Dist.*, 74 Mont. 111, 40 A. L. R. 1344, 238 Pac. 879); the service of notice as prescribed is jurisdictional as to the determination of the benefits to be derived and the inclusion of the particular lands in the district by reason of benefits derived, and, originally, the statutory requirements in this regard must be fully met before the court can proceed. (*Billings Bench Water Assn.* v. *Yellowstone County*, above; *In re Gallatin Irr. Dist.*, above; *Fallbrook Irr. Dist.* v. *Bradley*, above.)

It may be said that since, under the rule heretofore announced, the legislature may, by retroactive law, make that immaterial which it might have declared immaterial by prior enactment, the defect here noted was cured by our validating Act of 1923, as that body might originally have made publication alone sufficient as to all land owners; but the rule announced must be applied with discretion (Cooley's Constitutional Limitations, 531), and it is held that it cannot be extended so as to permit the legislature to provide, after a sale has been made under notice not sufficiently long to satisfy the

statute then in existence, that the shorter notice should be sufficient, though it might originally have made the shorter period sufficient. (*Finlayson* v. *Peterson*, 5 N. D. 587, 57 Am. St. Rep. 584, 33 L. R. A. 532, 67 N. W. 953; *Lowe* v. *Harris*, 112 N. C. 472, 22 L. R. A. 379, 17 S. E. 539); nor can the legislature do away with the necessity of allowing a party a hearing before decreeing the sale of his property. (*Roche* v. *Waters*, 72 Md. 264, 7 L. R. A. 533, 19 Atl. 535.)

The hearing provided for on notice under our statute ·is rendered indispensable by the following provisions of the Irrigation District Act: Section 7169, Revised Codes of 1921, declares in part: "Nor shall any lands which will not, in the judgment of the court, be benefited by irrigation by means of said system of works, nor shall lands already under irrigation, nor lands having water rights appurtenant thereto, nor lands that can be irrigated from sources more feasible than the district system, be included within such proposed district, unless the owner of such lands shall consent in writing to the inclusion of such lands in the proposed district." (See, also, sec. 7205, Id.)

In the decision in *Re Crow Creek Irr. Dist.*, 63 Mont. 293, 207 Pac. 121, it is said that "the fundamental principle which underlies the statute is that only such lands as will be specially benefited may be included against the will of the owner."

At the time the court made the order of inclusion it had no facts before it justifying that action and, clearly, the showing made herein places plaintiff's land without the authority of the district in the matter of assessment, even though it had been properly brought into the district, except for operating and maintenance charges.

Under the last quoted statutory provision, whether lands are or will be benefited by means of the system of works to be erected is left to the discretion of the court, but the inclusion of lands already irrigated from water rights ap-

purtenant thereto depends, not upon the exercise of the court's discretion, but upon the written consent of the owner.

We find no provision in other Irrigation District Acts for the inclusion of irrigable lands on consent of the owner, but the situation of such lands with reference to a proposed district in this state, where the owner has not consented in writing, is analogous to that of an owner of such lands in Nebraska, where their Irrigation District Act declares that such lands are exempt from the provisions of the Act; here the lands are exempt unless the owner does consent.

Under the Nebraska Act it is held that the question of exempted lands goes to the jurisdiction of the tribunal creating the district, and may be raised at any time in a proper case, the action there having been one concerning the legality of taxes levied against lands improperly included in a district. (*State* v. *Several Parcels of Land*, 80 Neb. 424, 114 N. W. .283.)

The reason for such an enactment as section 7169, above, is clearly expressed in *Horn* v. *Shaffer*, above, wherein the court said a statute which would compel a party to abandon a sufficient and satisfactory water supply of his own and coerce him to substitute in lieu thereof a municipally owned and furnished water supply, thereby subjecting his lands to the burden of additional taxation and to the lien of municipally issued bonds, not necessary to his needs and of no benefit to him, "would be harsh, arbitrary, and oppressive and, we think, would clearly violate the 'due process' clause of the federal Constitution. It would, for the benefit of others, deprive these plaintiffs of their property without any direct or indirect benefit to them." Such power as that suggested in the above quotation could not be originally granted by the legislature, and, therefore, where such action is taken by a district, it cannot be legalized by a subsequent validating enactment, and hence that effect cannot be given to our validating Act of 1923.

"Courts of equity will not permit corporate forms to be used as a shield for injustice and wrongdoing, or to il-

legally appropriate private property." (*Kardo Co.* v. *Adams* (C. C. A.), 231 Fed. 950.)

Under our Irrigation Act, an order creating a district and directing the inclusion of the lands described therein is, in effect, as to each owner of such lands, a separate judgment of inclusion of each tract so described, and, on the face of the judgment-roll in the proceeding creating the defendant district, the judgment decreeing inclusion of plaintiff's land is void; "no resulting equity in the hands of third persons, no power residing in any legislative or other department of government, can invest it with any of the elements of power or of vitality." (Freeman on Judgments, sec. 117.)

So here, the land of plaintiff not having been subject to inclusion within the district, and the court never having acquired jurisdiction over that land nor over the owner thereof, the order of creation, in so far as it relates to the inclusion of plaintiff's land, is void for want of jurisdiction—matters from which the legislature could not have relieved the court originally, as it could not declare that property rights could be taken without due process of law, and which could not, therefore, be cured or the void Acts validated by subsequent enactment—and the plaintiff, having acted expeditiously on acquiring knowledge of what had been done, had the right to raise the question in the manner above set forth. The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES STARK and GALEN concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE MYERS not sitting.

Rehearing denied December 21, 1928.