No. 96-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

WALTER HAMMERMEISTER, et al.,

     Plaintiffs and Appellants,

v.

NORTHERN MONTANA JOINT REFUSE DISPOSAL
DISTRICT, PONDERA COUNTY, GLACIER COUNTY,
TETON COUNTY, et al.,

     Defendants and Respondents.

APPEAL FROM:   District Court of the Ninth Judicial District,
                 In and for the County of Pondera,
                 The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

         Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena,
         Montana

     For Respondents:

         Selden S. Frisbee, Attorney at Law, Cut Bank,
         Montana

         Mark F. Higgins; Ugrin, Alexander, Zadick & Higgins,
         Great Falls, Montana

         Kevin C. Meek; Davis, Hatley, Haffeman & Tighe,
         Great Falls, Montana

FILED

OCT 2 2 1996

Filed: *El Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 19, 1996

               Decided:  October 22, 1996

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants Hammermeister, Reagan, William Mancoronal and Elizabeth Mancoronal, et al., appeal from the judgment of the Ninth Judicial District Court, Pondera County, in which it granted Northern Montana Joint Refuse Disposal District, Teton County, Glacier County and Pondera County, City of Conrad, City of Valier and Thomas C. Hammerbacker's (collectively NMJRDD) motion for summary judgment and denied appellants' motion for summary judgment. We affirm.

All parties agreed that there were no genuine issues of material fact and, thus, the matter was appropriate for summary judgment ruling under Rule 56, M.R.Civ.P. The undisputed facts as related by the District Court are as follows: NMJRDD was created in 1990 following several years of discussion between interested persons in several northern Montana counties and municipalities regarding disposal of refuse in light of the advent of more stringent federal regulation of land fills. The original Resolution of Intention to create NMJRDD described a land area larger than the district which was ultimately created. Notice of the original Resolution of Intention was properly given according to statute. However, no additional affirmative notice of the reduction in size was provided by the governmental entities creating the district. The reduction in size was the result of the fact that, although the resolutions passed by Glacier, Teton and Pondera Counties included the territory within Toole County, Toole County itself did not pass a resolution to create the district and

2

thus was not included in the final refuse district. Appellants' challenge to the formation of NMJRDD is based on the lack of subsequent notice of the reduction in size of the district.

Following its creation, NMJRDD developed a roll-off site and landfill site, incurred bond indebtedness, assessed and collected fees for its services from the residents of the district, including the appellants in this matter, and was utilized by the citizens of the district as well as other entities on a contract basis. No person is subject to assessment by the district whose property was not included in the original Resolution of Intention, though persons (who were not parties to this proceeding) whose property was included in the original Resolution of Intention, are not part of the district as finally created. In other words, the notice was overly broad.

Section 7-13-212, MCA, requires that, before ordering any proposed improvements, the commissioners shall pass a resolution creating the refuse disposal district "in accordance with the resolution of intention theretofore introduced and passed by the commissioners." Appellants contend that the county commissioners did not create a refuse disposal district *in accordance* with the Resolution of Intention because the boundaries of the district were reduced from the boundaries set forth in the notice of intent to create.

The question presented by the cross-motions for summary judgment is whether the initial creation of NMJRDD is subject to challenge due to the fact that the original Resolution of Intention

3

to create NMJRDD described a land area larger than the district ultimately created. In other words, does the fact that the land area ultimately included in the NMJRDD was smaller than the area described in the original Resolution of Intention invalidate the NMJRDD?

## DISCUSSION

The statutory procedure for creation of a joint refuse disposal district is set forth in Title 7, Chapter 13, part 2, MCA (1989). Pursuant to the statutory procedure, it is necessary for the county commissioners of the counties involved to adopt a Resolution of Intention to create a refuse disposal district. Such resolution is required to contain, among other things, a general description of the territory or lands of said district, giving the boundaries thereof. Section 7-13-204(2)(c), MCA. The counties of Pondera, Glacier and Teton passed resolutions of intention setting forth the requisite information. Because the proposed boundaries of the joint refuse disposal district included various municipalities, it was necessary that the commissioners of each of the three counties transmit a copy of their respective "Resolutions of Intention" to the executive head of each of the cities or towns within the proposed district in that particular county so that the resolution could be considered by the city or town council. Section 7-13-206, MCA.

Thereafter, if any of the city or town councils, by resolution, concur in the resolution of the county commissioners,

4

the city or town council must transmit a "Resolution of Concurrence" to the county commissioners. On the other hand, if an incorporated city or town council does not concur in the resolution, then the county commissioners have no authority to include said city or town in the district. The commissioners can, nonetheless, "continue to develop the district, excluding said city or town." Section 7-13-207, MCA. Thus, the legislature, having specifically authorized the commissioners to proceed to develop the district after excluding any city or town which chooses to opt out, specifically recognized that the final boundaries of the district may well be smaller than those outlined in the initial resolution of intention.

Section 7-13-208, MCA, then requires the commissioners to give notice of the passage of the resolution of intention and resolution of concurrence, if applicable, by publishing a notice describing the general characteristics of the collection system; the proposed fees to be charged for services; designating the time and place where the commissioners will hear and pass upon protests made against the operation of the proposed district; and "stating that a description of the boundaries for the proposed district is included in the resolution on file in the county clerk's office." The statute does not require that the notice describe the boundaries of the district or lands included in the district but, rather, refers the reader of the notice to the description of the boundaries included in the resolution on file in the county clerk's office. These notices were required to be published and mailed to

5

every person firm, or corporation having real property within the proposed district.

At any time thirty days after the date of first publication of the notice, any owner of property liable to be assessed for said services is entitled to make written protest against the proposed service or against the proposed fees. The protest is required to be in writing and delivered to the county clerk. Section 7-13-209, MCA. Under § 7-13-210, MCA, the commission is required to conduct a hearing and proceed to hear and pass upon all protests and "its decision shall be final and conclusive." Pursuant to § 7-13-212, MCA, the commissioners are deemed to have acquired jurisdiction to order improvements immediately upon the occurrence of one of the following: when no protests are delivered to the clerk within the specified time limit, when less than fifty percent of the family residential units in the proposed district protest, or when a protest shall have been overruled.

In the present case, each of the three counties determined that protests were filed by less than fifty percent of the family residential units in their respective portions of the proposed district. Accordingly, Teton, Glacier, and Pondera Counties each adopted resolutions creating the joint district.

> Did the District Court err in holding that appellants were estopped from challenging the formation of the refuse district some five years after its formation?

Appellants base their challenge on the fact that the refuse district as finally adopted, contained a smaller geographic area than what was originally delineated in the Notice of Intention to

6

Create. Appellants did not file their suit challenging the creation of the refuse district until 1995. In light of the fact that the district, as of the time of the challenge, had been operating for more than five years, the District Court was correct in relying upon Henderson v. School Dist. No. 44 (1926), 75 Mont. 154, 242 P. 979, and concluding that, given the public's reliance on the district for five years, appellants were estopped from challenging the creation of the refuse district.

Henderson involved an annexation of a small Fergus County school district (#42) to an adjacent and larger district (#44). The annexation was accomplished in 1919 by order of the county superintendent. Validity of the annexation was not challenged until five years later in 1925. All residents within the district, including the plaintiffs, acquiesced in the annexation, took part in the school elections, sent their children to its schools and paid the taxes levied upon their property for its support and maintenance. Henderson, 242 P. at 980. The plaintiffs in Henderson argued that the annexation was void since there had been no election on the issue in each of the districts, as required by statute. The Supreme Court in Henderson found that since there had been a good faith attempt to comply with an existing law, it could have found that the school district was a de facto corporation and thus not subject to collateral attack. Henderson, 242 P. at 981. The Court chose, however, to rely on an estoppel doctrine based upon public policy.

> After a community has for years, as in the case at
> bar, exercised the functions of a public corporation, its

7

legal existence cannot be questioned without causing disturbance more or less serious, and if the question of the regularity of its organization can be kept open to collateral inquiry indefinitely, no one can ever be secure in dealing with such entities, or be sure that taxes levied, bonds floated, or contracts necessarily entered into for the transaction of its business will be valid and enforceable. The transaction of public business might be blocked at any time at the will or whim of a private individual and the credit of the corporation impaired or destroyed. For these and other cogent reasons it is held that:

"An individual may be estopped by his conduct to attack the validity of the incorporation of a municipality, even though, but for such estoppel, he might do so." 28 Cyc. 175.

Thus acquiescence in the exercise of corporate functions, and dealing with the corporation as such over a period of years will estop all persons dealing with the corporation from assailing its legality. [Citations omitted.]

Henderson, 242 P. at 981-82.

The plaintiffs in Henderson argued that they should not have been subjected to estoppel by acceptance unless they had knowledge of the relevant facts and that they were unaware of the creation of the district until five years later, in April of 1925. Despite the lack of an election, the Court upheld the annexation noting that plaintiffs did more than accept the benefits; "they dealt with the district and accepted liability as well; they paid the taxes levied against their property for a number of years, thus recognizing the district and acquiescing in its assumption of corporate capacity . . . ." Henderson, 242 P. at 982. The Court then went on to point out that the estoppel being applied was not based upon plaintiffs' acceptance of or acquiescence in benefits, but was an estoppel based on public policy.

[T]he estoppel here invoked is not, therefore, strictly an estoppel by acceptance of benefits, *but rather it is*

8

*an estoppel based upon public policy*, because of the confusion into which a judgment, at this late date, that the organization was void, would throw public and private rights and interests acquired through years of operation with the acquiescence of the inhabitants, and is therefore not dependent upon knowledge of the facts.

Henderson, 242 P. at 982 (emphasis added).

In Scilley v. Red Lodge-Rosebud Irr. Dist. et al. (1928), 83 Mont. 282, 272 P. 543, this Court refused to invalidate the creation of an irrigation district despite a showing that an absentee landowner was not given notice of the inclusion of his real property in the new irrigation district. Although that single landowner was allowed to be excluded from the district, the Court, relying on Henderson, stated:

[I]f after years of such operations, the creation of a district may be declared invalid, wholesale ruin and disaster may follow within and without the territory included within the supposed district; bondholders be stripped of their security for money loaned in good faith, and future worthy projects be subject to suspicion and distrust. For these reasons, courts should declare against the validity of the organization of such going concerns only for the most cogent reasons, and when irresistibly compelled to such a course.

Scilley, 272 P. at 550.

Those same public policy concerns mandate a similar result in the present case. In the five plus years since its creation, the refuse district has developed a roll-off site and a landfill site; it has incurred bonded indebtedness and it has assessed and collected fees for its services from the residents of the district, including the appellants in this matter; and it has been utilized by the citizens of the district, as well as other entities on a contract basis. As in Henderson, the undisputed facts indicate

9

that there was a good faith attempt to comply with an existing statutory scheme for annexation. Thus, although there would be a basis for finding a de facto corporation not subject to collateral attack, we choose instead to hold that the demands of public policy require an estoppel. It is now over five years since the district was created. To declare that the refuse district is void at this late stage would throw public and private rights into considerable confusion. If districts such as this were indefinitely subject to collateral attack, no one would ever be secure in dealing with them, or confident that taxes, bonds or contracts entered into for the sake of public business were valid and enforceable. "The transaction of public business might be blocked at any time at the will or whim of a private individual and the credit of the corporation impaired or destroyed." Henderson, 242 P. at 981-82.

Appellants argue that the lack of a new notice setting forth the redefined boundaries was jurisdictional. They rely on our decision in Johnston v. City of Hardin (1919), 55 Mont. 574, 580, 179 P. 824, in support of their contention that the primary purpose of the notice was defeated because of the difference between the area described in the notice of intent as compared to the area encompassed in the final district. The decision in Johnston, however, was based upon the fact that:

> It is established by this record that the resolution to which plaintiff and other property owners were referred for a description of the boundaries of district No. 9 describes territory none of which is in that district, and the same thing is true with respect to district No. 10.

Johnston, 179 P. at 825. In other words, the resolution totally

10

failed to describe any of the territory within the district. Thus, Johnston is clearly distinguishable from the case at bar in which the notice of intention was overly broad; that is, it encompassed some territory which was not ultimately part of the district. However, all territory which was not included in the final district was included within the notice. As set forth above, this is not a case where an affected party did not receive notice.

The Court cited Johnston in Wood v. City of Kalispell (1957), 131 Mont. 390, 310 P.2d 1058, which involved a claim that defective notice of intent to create a special improvement district rendered the district void *ab initio*. In Wood the question was whether the city had jurisdiction to create a special improvement district where the notice of intention to create it was not mailed to all property owners in the proposed district. Although notices were mailed to some 424 property owners in the district, one owner (Pettibone) was not mailed a notice. Wood, 310 P.2d at 1059.

Citing Scilley, 272 P. at 552, we held that service of notice *as prescribed* by statute is jurisdictional and, thus, the failure to send notice to Pettibone deprived the city of jurisdiction to proceed as to him. Wood, 310 P.2d at 1060. As to the remaining property owners, the city argued that under the precedent in Scilley, the district should be void only as to the one property owner who did not receive notice, not as to all those who did. Wood, 310 P.2d at 1060. This Court, however, rejected that argument for the reason that, unlike Scilley where the challenge arose many years after the district had been created, the challenge

11

in Wood was brought before the city commenced work or began selling bonds. Thus, in contrast to Scilley, there was no public reliance as a basis for an estoppel, laches or waiver theory. Wood, 310 P.2d at 1060-61.

Wood is clearly distinguishable from the present case in a number of particulars: In Wood, the Court held that failure to serve notice as prescribed by statute was jurisdictional. Here, there was no failure to serve notice as prescribed by statute. Rather, the statute in question provided that notice must contain a "general description of the territory or lands of said district, giving the boundaries thereof." Section 7-13-204(2)(c), MCA. There is no statutory requirement that the notice be reissued if the boundaries are reduced in size. Secondly, Wood and Scilley involved situations where a landowner was denied due process because he/she did not receive the requisite notice. In the present case there is no contention that there was a denial of due process through lack of notice. On the contrary, the contention is that notice went out to people who were ultimately not included within the district. That is, that too many rather too few received notice. Finally, unlike Wood where the challenge was brought before any work commenced, appellants did not raise their challenge to the NMJRDD until years after the district was created and in full operation thus giving rise to questions of estoppel. Even assuming, *arguendo*, that there was a legal requirement that the Resolution of Intention be re-noticed due to a reduction in territory, failure to re-notice did not adversely affect any of the

12

landowners within the district as finally created and, thus, was not jurisdictional.

In summary, we hold that all affected parties received due process of law through receipt of notice of the intent to create the district; there was no statutory requirement that the notice of intent to create be re-noticed when the size of the district was reduced; and even if there were such a requirement, since the district has now been in operation for five plus years, the appellants are, for public policy reasons, estopped from challenging its creation or existence.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

October 22, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Edmund F. Sheehy, Jr.
Cannon and Sheehy
2031 Eleventh Avenue
Helena, MT 59601

Selden S. Frisbee
Attorney at Law
P.O. Box 1998
Cut Bank, MT 59427-1998

Kevin C. Meek, Esq.
Davis, Hatley, Haffeman & Tighe
P.O. Box 2103
Great Falls, MT 59403-2103

Mark F. Higgins, Esq.
Ugrin, Alexander, Zadick & Higgins
P.O. Box 1746
Great Falls, MT 59403-1746

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy